UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RESERVE CAPITAL CORPORATION;
HAWKINS DEVELOPMENT LLC; JAMES
W. HAWKINS; LORI JO HAWKINS;
HAWKINS FAMILY LLC; HAWKINS
MANUFACTURED HOUSING, INC.;
FOREST VIEW, INC.; WOODED
ESTATES, LLC; and TIOGA PARK, LLC,

                    Appellants,

     v.

PAUL A. LEVINE, *Chapter 11 Trustee*;
SOUTHERN TIER ACQUISITION, LLC;
ASOLARE II, LLC; BSB BANK & TRUST
CO.; and UNITED STATES TRUSTEE,

                    Appellees.

6:05-CV-00743
(LEK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DECISION AND ORDER

      Appellants/Debtors Reserve Capital Corporation, Hawkins Development LLC,

James W. and Lori Jo Hawkins, Hawkins Family LLC, Hawkins Manufactured Housing, Inc.,

Forest View, Inc., Wooded Estates, LLC, and Tioga Park, LLC ("Appellants/Debtors") appeal

the March 7, 2005 Decision and Order of the United States Bankruptcy Court for the

Northern District of New York (*Gerling, Chief B.J.*) authorizing the Trustee to enter into

certain settlements (as will be explained in more detail *infra*), and denying

Appellants/Debtors' Motions to disallow the claim of Asolare II, LLC, to remove the Trustee,

and to compel compliance with the terms of the March 5, 2004 consulting agreement.

## I. FACTS

Appellants/Debtors include eight separate entities and individuals.  Reserve Capital Corporation is a corporation that was engaged in the business of construction and installment contract financing of mobile homes.  Hawkins Development, LLC was engaged in real estate development.  Hawkins Family, LLC acted as a real estate holding company.  Hawkins Manufactured Housing, Inc. was engaged in the selling and financing of mobile homes.  Wooded Estates, LLC and Forest View, Inc., owned and operated mobile home communities.  Tioga Park, LLC owned a horse racing track.

BSB Bank & Trust Company ("BSB") was a secured creditor of the Debtors, holding mortgages and assignments of rent on much of the real property owned by Debtors.  BSB also held security interests in certain personal property owned by Debtors.  Each of the Debtors sought protection under Chapter 11 of the Bankruptcy Code by filing petitions in January 2003.  The Bankruptcy Court subsequently granted Debtors' motion to jointly administer the estates.  BSB filed proofs of secured claims in each case in an amount totaling $6,563,349.00.

By Agreement dated September 24, 2003, BSB agreed to assign the secured portion of its claims to Asolare Corporation ("Asolare").  BSB retained its interest in deficiencies as an unsecured claimant.  On that same date, Asolare II, LLC was formed ("Asolare II").  On October 1, 2003, BSB received final payment on the assignment.  On October 30, 2003, Asolare executed a Bill of Sale and Assignment to Asolare II of all of Asolare's right, title, and interest in the September 24, 2003 agreement with BSB.

On January 8, 2004, Asolare II filed a Notice of Transfer of Proof of Claim pursuant to Bankruptcy Rule 3001(e)(2).  This notice indicated that BSB's interests had been

transferred to Asolare II.  On August 27, 2004, Asolare II filed an amended Notice of Transfer of Proof of Claim.  This notice advised the Bankruptcy Court and the parties of the assignment of BSB's interest to Asolare, and Asolare's assignment of those same interests to Asolare II.  Asolare II filed amended Proofs of Claim alleging a secured claim of $4,845,221.64.  The Debtors objected to BSB and Asolare II's claims.

Meanwhile, on June 1, 2004, the Bankruptcy Court confirmed the Joint Chapter 11 Plan of Tioga Park, LLC.  As is relevant hereto, the Joint Plan provided that the estate of James Hawkins was to receive: (1) 55% of the $100,000 consulting fee due to him under a five year consulting agreement previously negotiated by the parties; and (2) a 2% equity interest in the post confirmation transferee of the assets of Tioga Park, LLC.  The Joint Plan further provided that the personal residence of James and Lori Hawkins would be conveyed to Asolare II in partial satisfaction of its secured claim.  Asolare II was to then sell the property back to James and Lori Hawkins for $100,000.  Under the approved plan, Southern Tier Acquisitions and Jeffrey Gural were to provide funding to James Hawkins to facilitate the purchase of his home and to satisfy certain priority tax claims.  The approved plan further required Debtors to discontinue their adversary proceeding against BSB in which they sought to limit the amount of BSB's secured claim based upon allegations of deficiencies in the loan documents.

On August 12, 2004, the United States Trustee moved to covert the pending cases to Chapter 7 or, in the alternative, appoint a Trustee pursuant to 11 U.S.C. § 1104.  By Order dated September 16, 2004, the Bankruptcy Court appointed Appellee Paul Levine, Esq. as the Chapter 11 Trustee.  In November 2004, the Trustee filed a motion to compromise.  In the motion, the Trustee sought to liquidate three sources of money to help fund the

bankruptcy estates: (1) a present value lump sum payment of the estate's share of the consulting fee;[1] (2) a payment in exchange for the estates' conveyance of their 2% equity interest in Tioga Downs, LLC; and (3) a payment on account of the agreement to fund money into the bankruptcy estates in recognition of priority tax claims.

On March 7, 2005, the Bankruptcy Court issued an Order: (1) denying Debtors' motion to remove the Trustee; and (2) finding the compromises proposed by the Trustee to be fair and reasonable and to be in the best interests of the creditors of the estate and, therefore, allowing the Trustee to enter into the settlements proposed in his motion to compromise.  Debtors now appeal the March 7, 2005 Order.

## II.  STANDARD OF REVIEW

Bankruptcy Rule 8013 provides, *inter alia*, that a bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." FED. R. BANKR. P. 8013.  See also R.M. 18 Corp. v. Aztex Assocs., L.P (In re Malease 14FK Corp.), 351 B.R. 34, 40 (E.D.N.Y. 2006).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992). A bankruptcy court's legal conclusions are subject to *de novo* review.  Capital Commc'n Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 47 (2d Cir. 1997).

---

[1] As noted, James Hawkins was to receive 55% of the $100,000 consulting fee due to him under a five year consulting agreement.

Matters left to the discretion of the bankruptcy court are reviewed for an abuse of discretion. Id.

### III.  DISCUSSION

#### A.  Denial of the Motion to Disallow the Claim of Asolare II and BSB

Appellants/Debtors first contend that the Bankruptcy Court committed clear error by denying their motion to disallow the claim of Asolare, II and BSB.  Appellants/Debtors contend that Asolare II did not properly demonstrate perfection of its security interest, and Asolare II committed fraud against the Court and other parties to this matter.

As to the first matter, Appellants/Debtors fail to point to where in the record below they raised any issue concerning the perfection of Asolare II's security interest.  "[T]he general rule is that an appellate court will not consider an issue not passed upon below unless failure to entertain the issue will result in a manifest injustice."  Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.), 309 B.R. 830, 841-42 (S.D.N.Y. 2003) (citation omitted); McDuffy v. Novak, (In re DeGeorge Fin. Corp.), Nos. 99-32300-02 (ASD), Civ.A. 3:01CV0009 (CFD), 2002 WL 31096716, at *6 (D. Conn. 2002) (citation omitted); Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994) (citations omitted).  Debtors have failed to demonstrate any manifest injustice.  Accordingly, this issue has been waived.  In any event, the record reveals that Asolare II acquired BSB's perfected security interest through a series of transfers from BSB to Asolare and then to Asolare II.

With respect to the allegation of fraud, the Court finds that the Bankruptcy Court did not commit clear error in finding that there was no fraud on the part of Asolare II.  The January 8, 2004 Notice of Transfer plainly provides that "Secured Creditor Asolare II, LLC,...

hereby submits Notice of the Assignment of the Secured Claim of BSB Bank & Trust Company to Asolare II, LLC pursuant to Bankruptcy Rule 3001(e)(2)."  Bankr. Dkt. No. 178. Debtors correctly note that the Notice of Transfer did not indicate that BSB (which filed proofs of claim) transferred its claims to Asolare, which then transferred its claims to Asolare II. This omission was cured by an Amended Notice of Transfer filed with the Bankruptcy Court in September 2004.  Bankr. Dkt. No. 370.  The Amended Notice of Transfer clearly indicated that BSB assigned its interests to Asolare, which then assigned its interests to Asolare II. Although the order confirming the joint plan of Tioga Park occurred in June 2004 (prior to the Amended Notice of Transfer), there is no indication that the Bankruptcy Court was misled in any way or that, had the Bankruptcy Court known that the transfer went from BSB to Asolare II through Asolare, the result would have been any different.

Regardless, Bankruptcy Rule 3001(e)(2) plainly provides that only the transferor may object to the notice of transfer of claim filed by the transferee.  See In re Lynn, 285 B.R. 858, 859 (Bankr. S.D.N.Y. 2002) ("Bankruptcy Rule 3001(e), which governs the assignment of bankruptcy claims, does not confer standing on the Debtor to object to the assignment....").  Because Debtors do not have standing to object to the assignment, their motion to disallow the claims of Asolare II and BSB was properly denied.

### B.  Denial of Motion to Remove Trustee or to Compel Trustee to Disallow the Claim of Asolare II and BSB

Appellants/Debtors next argue that the Bankruptcy Court erred by failing to grant their motion to remove the Trustee.  The basis of Appellants/Debtors' argument is that the Bankruptcy Court was without power to appoint a trustee after the Tioga Park plan had been confirmed.  The Joint Plan of Tioga Park was confirmed in June 2004 and the Trustee was

appointed in September 2004.  Debtors argue that 11 U.S.C. § 1104(a) prohibits the

appointment of a trustee after a plan is confirmed.  The Bankruptcy Court denied this motion

because Debtors failed to timely appeal the order appointing the Trustee.

     The Second Circuit clearly stated in Silverman v. Tracar, S.A. (In re Am. Preferred

Prescription, Inc.), 255 F.3d 87, 93 (2d Cir. 2001), that "a post-confirmation ruling to appoint

a trustee has the significance to warrant an appeal...."  The Silverman Court continued to

note that:

> the rare post-confirmation order that has a significant potential for
> affecting the rights of parties should be challenged promptly (if at all) in
> order to avoid disruption of the plan's consummation.  An unappealed
> post-confirmation order appointing a trustee should have preclusive
> effect, just as an unappealed order confirming a plan, see Multnomah
> County v. Ivory (In re Ivory), 70 F.3d 73, 75 (9th Cir. 1995) (bankruptcy
> court's confirmation of plan is final order that if not appealed, cannot be
> attacked a few months later in same bankruptcy proceeding, even for lack
> of subject matter jurisdiction); Republic Supply Co. v. Shoaf, 815 F.2d
> 1046, 1050 (5th Cir. 1987) (same).  The "finality interests" of res judicata
> "are particularly important in the bankruptcy context, where numerous
> contending claims and interests are gathered, jostle, and are determined
> and released." [Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82,
> 91 (2d Cir. 1997)].

Id. at 94.  See also In re Adelphia Commc'n Corp., 333 B.R. 649, 657 (S.D.N.Y. 2005).  In

Silverman, the bankruptcy court denied a creditor's motion to remove a trustee who had been

appointed post-confirmation.  On appeal, the district court held that the bankruptcy court

lacked jurisdiction to appoint a post-confirmation trustee.  The district court's order was

reversed by the Second Circuit, which held that the creditor "had an opportunity to challenge

the appointment of [the trustee] by appealing the post-confirmation appointment order..., and,

having failed to do so, is now precluded from challenging his authority."  Silverman, 255 F.3d

at 88.  The same result applies here.  Because Debtors failed to timely appeal the

appointment of the Trustee, they are barred from challenging the order appointing the
Trustee or challenging his authority.

### C.  Denial of Debtors' Motion to Compel Compliance with the Consulting Agreement

Appellants/Debtors next contend that the Bankruptcy Court erred in refusing to
compel compliance with the consulting agreement entered into between the parties.
Appellants/Debtors, however, provide no legal authority for their contention that the
Bankruptcy Court was obligated to entertain this motion rather than leave Debtors to pursue
their interests in this regard in state court or another forum.  Therefore, this portion of the
appeal is dismissed, and the Bankruptcy Court is affirmed.

### D.  Granting of Trustee's Motion to Compromise

Lastly, Appellants/Debtors challenge the Bankruptcy Court's granting of the
Trustee's Motion to Compromise.  The grounds for Appellants/Debtors' challenge is that: (1)
the motion was made as one to compromise, whereas it should have been a motion for
modification; (2) the motion was substantively deficient; (3) the Bankruptcy Court failed to
follow its own order; and (4) the Trustee failed to advise of certain insider activity designed to
sell equity shares to insiders at fire sale prices.

With respect to the substance of the motion to compromise, the Court finds that the
Bankruptcy Court did not err.

> Rule 9019(a) of the Federal Rules of Bankruptcy Procedure grants the
> bankruptcy court authority to approve settlement of legitimate disputes in
> bankruptcy cases.... The decision whether to approve a compromise is
> within the discretion of the bankruptcy court and can only be reversed for
> abuse of such discretion.... In considering whether to approve a
> settlement, a bankruptcy court is required to review the reasonableness of

the proposed settlement.... The Court must make an informed judgment whether the settlement is fair and equitable and in the best interests of the estate.... The bankruptcy judge is best situated to consider the reasonableness of the settlement, as well as the equities involved....

It is not necessary for the bankruptcy court to conduct a "mini trial" on the issue.... The Court need only "canvass the issues" to determine if the "settlement falls below the lowest point in the range of reasonableness."... The factors to be weighed by the court included (1) the balance between the likelihood of success in the litigation compared to the present and future benefits offered by the settlement, (2) the prospect of complex and protracted litigation with its attendant expense, inconvenience, and delay, and the difficulties associated with collection of any judgment, (3) the paramount interests of the creditors, which includes the relative benefits to be received by members of any affected class and the degree to which creditors either do not object to or affirmatively support the proposed settlement, (4) the degree to which the settlement is supported by other parties in interest and the competency and experience of counsel who support the settlement, (5) the nature and breadth of releases to be obtained by officers and directors, and (6) the extent to which the settlement is the product of arm's length bargaining.

In re WorldCom, Inc., 347 B.R. 123, 136-37 (Bankr. S.D.N.Y. 2006) (citing, *inter alia*,

Lambert Brussels Assocs. Ltd. Partnership v. Drexel Burnham Lambert Group, Inc. (In re

Drexel Burnham Lambert Group, Inc.), 140 B.R. 347, 349 (S.D.N.Y. 1992); Fischer v. Pereira

(In re 47-49 Charles Street, Inc.), 209 B.R. 618 (S.D.N.Y. 1997); In re Drexel Burnham

Lambert Group, Inc., 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992); In re Teltronics Serv., Inc.,

762 F.2d 185, 189 (2d Cir. 1985)).

The Bankruptcy Court properly considered the relevant factors and concluded that

the proposed compromises did not fall below the lowest point in the range of reasonableness

and were fair, reasonable, and in the best interests of the estate.  Upon review, this Court

agrees.  The Court cannot say that the Bankruptcy Court committed clear error in its

determination of the relevant facts or abused its discretion in concluding that the proposed

compromises were fair, reasonable, and in the best interests of the estates.

Appellants/Debtors also claim that the Bankruptcy Court did not have the authority to compromise an already confirmed plan (the Tioga Park plan that had been confirmed), but, rather, the March 7, 2005 Order effectuated an improper modification of the plan.  The Bankruptcy Code prohibits the modification of a substantially consummated plan.  11 U.S.C. § 1127(b).  Only a plan proponent or debtor has standing to modify a confirmed plan.  Id; see also Ins. Subrogation Claimants v. U.S. Brass Corp. (In re U.S. Brass Corp.), 169 F.3d 957, 962 (5th Cir. 1999); United States Trustee v. CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah, Inc.), 150 F.3d 1233, 1235, 1238 (10th Cir. 1998).  The question here is whether the approved compromise constituted an amendment of the Tioga Park plan.

The Tioga Park plan included the disposition of certain rights and obligations of James Hawkins, Southern Tier Acquisition, LLC., Asolare II, and others.  As previously noted, under the terms of the confirmed joint plan, the estate of James Hawkins was to receive certain monies under a modified consulting agreement.  These monies included: (1) 55% of the $100,000 annual consulting fee; and (2) a 2% equity interest in the post confirmation transferee of the assets of Tioga Park, LLC.  In addition, the personal residence of James and Lori Hawkins was to be conveyed to Asolare II in partial satisfaction of its secured claim and sold back to James and Lori Hawkins for $100,000.  Hawkins also was to obtain funding from an individual and Southern Tier Acquisition for purposes of facilitating the purchase of the home and for paying the priority tax claims.

Through the motion to compromise, the Trustee sought to obtain: (1) a present value lump sum of the estate's share of the consulting fee; (2) a payment in exchange for the estates' conveyance of their 2% equity interest in Tioga Downs; and (3) a payment on account of the agreement to fund money into the bankruptcy estates in satisfaction of certain

priority tax claims.  The Trustee contends that the compromises were necessary because the confirmed plan failed to provide for the present value of the estate's interest in the consulting fee, failed to value the estates' equity interest in the 2% interest in Tioga Park, and did not resolve the question of compliance with the Bankruptcy Court's adequate protection order.

In their opposition to the motion to compromise, Appellants/Debtors raised the issue that the proposed relief was contrary to the previously confirmed plan of Tioga Park. The Bankruptcy Court never addressed this claim.  The Trustee's compromise appears to alter the rights of James Hawkins and the other estates from what was expected under the confirmed Tioga Park plan.  For example, rather than receiving a 2% equity interest in Tioga Downs, under the compromise, Hawkins would receive $60,000.  Irrespective of whether the $60,000 was a reasonable compromise of the claims, $60,000 may well be different than the 2% equity interest in Tioga Downs.  Accordingly, the Bankruptcy Court's Order approving the motion to compromise may be seen as an improper post-confirmation modification of the Tioga Park plan.  Whether the compromises constitute a post-confirmation modification of the Tioga Park plan should be addressed in the first instance by the Bankruptcy Court. Accordingly, this matter is remanded to the Bankruptcy Court for a determination of whether the Trustee's proposed compromises would constitute an improper post-confirmation modification of the Tioga Park plan.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the March 7, 2005 Order of the Bankruptcy Court (*Gerling, Chief B.J.*) is **AFFIRMED IN PART** and **REMANDED IN PART**, as discussed above.  Those

portions of the Bankruptcy Court Order denying Appellants/Debtors' motions to disallow the claims of Asolare II and BSB, remove the Trustee, and compel compliance with the consulting agreement are **AFFIRMED**.  With respect to the motion to compromise, this Court finds that the Bankruptcy Court did not abuse its discretion in finding that the proposed compromises were fair, reasonable, and in the best interests of the estates, but **REMANDS** the matter to the Bankruptcy Court for consideration of whether the March 7, 2005 Order constituted an impermissible post-confirmation modification of the Tioga Park plan; and it is further

ORDERED, that the Clerk serve copies of this Order upon the parties to this action.

IT IS SO ORDERED.

DATED:  January 30, 2007
          Albany, New York

Lawrence E. Kahn
U.S. District Judge